TINKHAM et al., Appellants and Cross-Appellees,

v.

GROVEPORT–MADISON LOCAL SCHOOL DISTRICT et al.,
Appellees; HUNDLEY, Appellee and Cross–Appellant.

[Cite as *Tinkham v. Groveport–Madison Local
School Dist.* (1991), 77 Ohio App.3d 242.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–77.

Decided Sept. 19, 1991.

244

*DeLibera, Lyons, Daulton & More, John S. DeLibera, Dan More* and *David A. Colley,* for appellants and cross-appellees.

*Enz, Jones & LeGrand, Grey W. Jones* and *Susan M. Gabriel,* for appellees Groveport–Madison Local School District, Nadine Asbury, Charles Barr, Barbara Brannon, Robert Carter, Neil Lantz, Don Noble and Mark Stevens.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Larry H. James,* for appellee United Transportation, Inc.

*Paul Scott Co., L.P.A.,* and *Paul Scott,* for appellee and cross-appellant Uriel Hundley.

WHITESIDE, Judge.

Plaintiffs, Amy Potenza and her mother Carol Ann Tinkham, appeal the Franklin County Court of Common Pleas' grant of a directed verdict for defendant United Transportation, Inc., d.b.a. Yellow Cab Company ("UTI"), and of a partial directed verdict for defendant Groveport–Madison Local School District ("Groveport"). Defendant Uriel Hundley cross-appeals from the verdict in the amount of $425,000 in favor of plaintiffs.

Plaintiffs raise the following six assignments of error:

"1. The trial court erred when it granted defendant United Transportation's motion for a directed verdict at the conclusion of plaintiffs' case in chief as United Transportation is a common carrier and therefore liable for the intentional torts of its agent driver and UTI was negligent in supervising its agent driver.

"2. The trial court abused its discretion and committed reversible error when it ruled that Francis Beard could not testify as an expert witness.

"3. The trial court committed reversible error when it granted a partial directed verdict to defendant Groveport Madison Local School District as the decision to use a cab to transport Amy Potenza was not protected by the doctrine of sovereign immunity.

"4. The trial court erred when it granted defendant Groveport Madison Local School District and related employee defendants a partial directed verdict as the Groveport Madison Local School District had a nondelegable duty to provide safe transportation to Amy Potenza, [but] hired a common carrier to discharge that duty, and therefore Groveport Madison is liable under the same standards as the common carrier for the intentional torts of the common carrier's agent or employee.

"5. The trial court erred when it refused to instruct the jury that Groveport Madison Local School District was to be held to the same standard of care as a common carrier.

"6. The trial court erred when it refused to instruct the jury on the issue of joint and several liability."

Hundley cross-appeals and raises the following three assignments of error:

"1. Whether the trial court committed reversible error in permitting plaintiff-appellant, Amy Potenza, to testify over objections of counsel.

"2. Whether the trial court committed reversible error by permitting Dr. Jolie S. Abrams [sic Brams] to testify regarding her opinions over objections of counsel.

"3. Whether the jury verdict should be reversed as a result of sympathy to plaintiff-appellant, Amy Potenza."

Plaintiffs filed a civil complaint in the Franklin County Court of Common Pleas seeking damages from the named defendants for the alleged sexual assault of Potenza, a developmentally disabled student in the Groveport–Madison School District ("Groveport"). Plaintiffs sought damages from Hundley for his alleged intentional torts against Potenza, from Groveport and its employees for their negligence which allegedly contributed to the injuries of Potenza, and from UTI as a common carrier for breaching its duty owed to Potenza as a passenger.

Plaintiffs alleged in the complaint that, during the months of December of 1984 and January and February of 1985, Hundley drove the eight-year-old child, Potenza, to his home and sexually molested her. Hundley was an employee of UTI at the time and had been hired to drive Potenza and her sister to Dunloe Elementary School, a school within Groveport's district. Plaintiffs further alleged in the complaint that Potenza arrived late to school on several occasions as a direct result of the sexual abuse but that the school failed to notify her mother of the late arrivals.

A jury trial was held almost five years after the alleged assault, in December 1989. At the close of plaintiffs' case, the trial court granted a directed verdict for UTI on the ground that, even if the allegations were proved, Hundley had acted outside the scope of his employment, and UTI could not be held liable under the doctrine of *respondeat superior*. The trial court also granted a partial directed verdict for Groveport on the basis that Groveport's decision to transport Potenza to school by a private taxicab was protected by sovereign immunity.

By plaintiffs' first assignment of error, they assert that the trial court erred in granting UTI's directed verdict motion because UTI is liable as a common carrier for the acts of Hundley, even if he was an independent contractor.

In its opinion, the trial court explained that UTI could not deny an agency relationship with Hundley but that UTI was not liable for Hundley's acts under the doctrine of *respondeat superior*. The trial court reasoned that, because Hundley's conduct was outside the scope of his employment as a taxicab driver, his employer, UTI, could not be liable for such acts. The trial court erred in this respect. As a taxicab company, UTI is a common carrier. As stated in the fourth paragraph of the syllabus of *Korner v. Cosgrove* (1923), 108 Ohio St. 484, 485, 141 N.E. 267, 267:

"It is the duty of the driver of a public taxicab to treat passengers respectfully, and the owner of such taxicab and employer of such driver must respond in damages to a passenger for the unwarranted assault of such driver committed in the course of such transportation."

The duty owed by a common carrier to its passenger was enunciated by the Ohio Supreme Court in *Korner*, at 489, 141 N.E. at 268:

"* * * The carrier's obligation is to carry the passenger safely and properly and to treat him respectfully, and if the performance of this duty is intrusted to an agent or servant the carrier is held to a strict responsibility for the assaults and insults of such servants. * * *"

*Korner* is dispositive of the case at bar, as the facts are almost identical to the facts herein. First, like the taxicab driver in *Korner*, Hundley was engaged to drive a female passenger safely to her destination but, instead, drove to a different location and allegedly raped her. That conclusion is even more compelling here since the passenger was a child. That the contract to safely transport Potenza was between the cab company (UTI) and Groveport, rather than directly through the driver of the cab, does not detract from the application of *Korner* as to the liability of UTI. In this case, the contract imposed a nondelegable duty upon UTI to transport Potenza safely, such that UTI would be liable as a common carrier regardless of whether Hundley was an employee or an independent contractor.

In addition, that the driver in *Korner* raped the passenger while still inside the company cab, whereas Hundley allegedly raped the passenger outside the cab, is not determinative but, at most, presents a question of fact. Both drivers acted willfully outside the technically proper scope of their employment, and from a personal rather than business purpose. As the Ohio Supreme Court stated in *Korner*, at 488–489, 141 N.E. at 268:

"* * * The act of the driver was unprovoked and was committed while discharging the duties of his employment, and while using the facilities and equipment of his employer, and for which the employer received the compensation usually paid for such service. The facts therefore make the strongest possible case, and the injury and damages were of a most grievous character. * * *"

The same court aptly recognized the policy concerns supporting carrier liability for willful acts of drivers in *Korner*, at 492, 141 N.E. at 269:

"* * * [T]he public cannot have the assurance that drivers of public taxicabs are men of integrity and character * * * [unless] the owners of such vehicles employed in public transportation of passengers are held to a strict

accountability for unwarrantable assaults and insults at the hands of employes in charge of such passengers."

■ A directed verdict should not have been granted since UTI could have been liable as a common carrier for the alleged conduct of Hundley. The standard for granting a directed verdict is provided in Civ.R. 50(A)(4):

"When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

Thus, granting a directed verdict for UTI would have been proper if the evidence, construed most strongly in favor of plaintiffs, were such that reasonable minds could only conclude that UTI was not liable for the alleged acts of Hundley. *Korner* requires a finding that a directed verdict was improper under these facts. Sufficient evidence was presented at trial to support a finding that the alleged abuse did in fact occur. The victim testified in court as to the circumstances of the alleged abuse. Although Dr. Coury's testimony indicated there was no physical evidence of abuse, the testimony offered by the victim on her own behalf was sufficient to support a jury finding that some abuse did in fact occur. In conclusion, the evidence construed most strongly in favor of plaintiffs could support a finding that Hundley sexually assaulted Potenza while engaged in transporting her to school for hire in performance of UTI's contract and, thus, that UTI could be liable as a common carrier. Accordingly, plaintiffs' first assignment of error is well taken.

■ UTI assigns as error the trial court's failure to grant its motion for a directed verdict based on UTI's proposed theory that Hundley was an independent contractor. Because UTI did not file a notice of appeal, as required by App.R. 3(A), this court cannot properly consider the alleged error in the court's ruling. Even if we were to consider the ruling, there was no error as assigned. The employment status of Hundley is not determinative of UTI's liability as a common carrier for the breach of a nondelegable duty by a driver of one of its taxicabs. See *Shaver v. Shirks Motor Express Corp.* (1955), 163 Ohio St. 484, 56 O.O. 404, 127 N.E.2d 355.

By plaintiffs' second assignment of error, they maintain that the trial court abused its discretion by refusing to allow Francis Beard to testify as an expert witness.

■ Under Evid.R. 702, an expert witness may testify or give an opinion if so doing assists the trier of fact in understanding the evidence or in determining a fact in issue:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

This rule provides that an expert may testify or give an opinion if the trier of fact's search for the truth is helped. *South Union, Ltd. v. George Parker & Assoc., AIA, Inc.* (1985), 29 Ohio App.3d 197, 29 OBR 241, 504 N.E.2d 1131.

■ Before testifying pursuant to Evid.R. 702, a witness must first be qualified to testify as an expert pursuant to Evid.R. 104, and this determination rests with the trial court. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 15, 19 OBR 71, 80, 482 N.E.2d 955, 965. On appeal, the trial court's ruling will not ordinarily be reversed without a clear showing that the court abused its discretion. See the eighth paragraph of the syllabus of *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 58 O.O. 179, 131 N.E.2d 397; *Wagenheim, supra*, 19 Ohio App.3d at 18, 19 OBR at 83, 482 N.E.2d at 968. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

■ The test for determining the competency of an expert witness was set forth in *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 160, 65 O.O.2d 374, 379, 304 N.E.2d 891, 897, quoting from 21 Ohio Jurisprudence 2d 429, Evidence, Section 421, as follows:

" '* * * [H]is qualification [as an expert witness] depends upon his possession of special knowledge which he can impart to the jury, and which will assist them in regard to a pertinent matter, which he must have acquired either by study of recognized authorities on the subject or by practical experience, and it must appear that he has an opinion of his own, or is able to form one, upon the matter in question.' "

The expert must be sufficiently qualified to testify or to give an opinion based upon some superior knowledge not possessed by ordinary jurors.

■ Here, the voir dire of Beard reveals that he had significant education and practical experience in the field of general school administration. However, the same voir dire revealed a significant lack of experience with respect to the transportation of individual students to school by private taxicab companies or any other means. Because Beard lacked experience, personal or

otherwise, with respect to the transportation of students by taxi, and because Beard was to offer "expert" opinions on the standard of care owed by Groveport to one of its students, Potenza, being transported to school by taxi, the trial court did not abuse its discretion in ruling that Beard was not qualified as an expert. That is, it was within the discretion of the trial court to rule that the witness's opinion would not be based upon some superior knowledge not possessed by the ordinary juror and that his testimony would not help the jury to understand the standard of care owed by Groveport to Potenza. Accordingly, plaintiffs' second assignment of error is not well taken.

By plaintiffs' third assignment of error, they assert that the trial court improperly granted the directed verdict for Groveport because Groveport could not escape liability under the doctrine of sovereign immunity. The trial court ruled that because Groveport exercised its discretion in determining that Potenza should be transported to school by a private taxicab, the school was immune from liability. At the same time, the trial court denied the school's motion for a directed verdict as it related to the school's actual implementation of the new policy to transport Potenza by taxi. The trial court concluded that, even though the decision by the school was protected by the doctrine of sovereign immunity, the school could nevertheless be liable for the negligence of its employees in implementing that policy.

In *Enghauser Mfg. Co. v. Eriksson Engineering, Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, the Ohio State Supreme Court abolished sovereign immunity for municipal corporations, except in instances of policy-making decisions involving a high degree of official judgment or discretion. The *Enghauser* court, at 35, 6 OBR at 56, 451 N.E.2d at 232, distinguished between policy decisions and implementing government policy:

"* * * This court does not contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation. The appropriate dividing line falls between those functions which rest on the exercise of judgment and discretion and represent planning and policy-making and those functions which involve the implementation and execution of such governmental policy or planning."

Paragraph two of the syllabus of *Enghauser* abolishes municipal immunity only for the implementation of policy:

"Under this decision abolishing municipal immunity, no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is

characterized by the exercise of a high degree of official judgment or discretion. However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities."

The abolishment of sovereign immunity and the principles of *Enghauser* apply equally to boards of education. *Carbone v. Overfield* (1983), 6 Ohio St.3d 212, 6 OBR 264, 451 N.E.2d 1229.

■■■ The record in this case demonstrates that Groveport exercised its discretion in making a policy decision to transport Potenza, a developmentally disabled youth, by taxicab. A district board of education is authorized to provide alternative modes of transportation for developmentally handicapped students where the board determines it is impractical to transport the student by regular buses on regular routes. Ohio Adm.Code 3301–51–14. Plaintiffs contend that the regulation mandates the procedure by which the board of education must decide to transport a developmentally handicapped student, arguing that, where no discretion is permitted, sovereign immunity would not apply. We disagree. The regulation mandates that transportation be provided for developmentally handicapped children, but the regulation does not provide how the board is to decide that regular transportation is "impractical." The decision is one of policy and requires the board to exercise its discretion. This type of decision requiring a high degree of discretion by a government body is precisely the type contemplated under the doctrine of sovereign immunity. Regardless of how arbitrary or negligent the board may have been in exercising its discretion in this instance, the board cannot now be held liable in tort. This court will not substitute its own judgment for that of a school board making a policy determination requiring the exercise of judgment and discretion. Accordingly, plaintiffs' third assignment of error is likewise not well taken.

■■■ By plaintiffs' fourth and fifth assignments of error, they maintain that the trial court erred, first, in not finding as a matter of law that Groveport could not delegate its duty to transport Potenza safely and, second, in not instructing the jury on the matter.

Pursuant to our discussion of plaintiffs' third assignment of error, we noted that the Ohio Administrative Code specifically authorizes a board of education "to delegate its duty" of transporting to school developmentally handicapped students by authorizing the contracting for transportation services. Because the legislation expressly authorizes the board to contract for the service, the trial court did not err in either situation. Accordingly, plaintiffs' fourth and fifth assignments of error are not well taken.

By plaintiffs' sixth assignment of error, they assert that the trial court erred in not instructing the jury on the doctrine of joint and several liability with respect to Hundley and Groveport.

Any error in not charging upon the doctrine of joint and several liability is not prejudicial in light of our determination of the third, fourth, and fifth assignments of error. Even though the trial court submitted the issue of Groveport's liability to the jury, there was no factual basis upon which such liability could have been founded since Groveport is entitled to immunity. In addition, as to Groveport, Hundley's willful misconduct constituted an intervening cause for which Groveport could not be held accountable. Consequently, plaintiffs' sixth assignment of error is not well taken.

By Hundley's first cross-assignment of error, he maintains that Potenza was incompetent to testify under Evid.R. 601(A) and that neither Dr. Brams nor plaintiff Tinkham should have been permitted to testify as to Potenza's statements.

Evid.R. 601(A) specifically provides that a child under the age of ten is presumed to be incompetent if the child: (1) appears incapable of receiving just impressions of the facts and transactions respecting which they are examined, or (2) appears incapable of relating them truly. The essential test of competency of a child is the child's ability to tell the truth and to observe, recollect, and communicate the facts.

As the trier of fact, the trial judge has the duty of making a preliminary determination of a child's competency. *State v. Wilson* (1952), 156 Ohio St. 525, 530, 46 O.O. 437, 439, 103 N.E.2d 552, 555. An appellate court will not disturb the trial court's decision unless there is a clear showing of an abuse of discretion. *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483. When a child is younger than ten at the time he or she witnesses an event about which he or she is called to testify to at trial, but is older than ten by the time of testifying, the trial court must make a preliminary determination of the competency of the witness to testify as to the prior events. *Huprich v. Paul W. Varga & Sons, Inc.* (1965), 3 Ohio St.2d 87, 32 O.O.2d 61, 209 N.E.2d 390. Since Potenza was thirteen years old at the time of this trial but was eight years old at the time she was allegedly abused, the trial court was required to determine if she was competent to testify about the incident.

The voir dire at trial sufficiently demonstrates that the court did not abuse its discretion in finding Potenza to be a competent witness. Potenza gave responsive answers to questions asked by the court and by counsel. She further indicated that she knew the importance of telling the truth. There is

consequently no showing that the trial court abused its discretion in finding that Potenza would be capable of meeting the requirements of Evid.R. 601(A), because she appeared capable of receiving just impressions of the facts and of relating them truthfully. Accordingly, defendant's first cross-assignment of error is not well taken.

By Hundley's second cross-assignment of error, he avers that the trial court erred in permitting the witness, Dr. Brams, to testify that, in her opinion, Potenza had been sexually abused.

Although Dr. Brams is a clinical child and family psychologist, the opinion testimony as to sexual abuse is not a matter within her field of expertise and, thus, she did not testify as an expert. Rather, she testified the same as a lay witness upon this issue.

Dr. Brams testified that she met with Potenza on three separate occasions in 1988 for the purpose of diagnosing Potenza's emotional disturbance. She further testified that, based upon her professional background, her sessions with Potenza, and the information she acquired from the child's mother, she was of the opinion that Potenza had an "adjustment disorder" due to the alleged sexual abuse. To the extent the opinion was based upon professional background and opined as to a diagnosed condition, it could qualify as an expert opinion, that is, that the child had an adjustment disorder which could have resulted from the sexual abuse if it in fact had occurred.

In order for a witness to give testimony in the form of an opinion or inference, Evid.R. 703 requires that the opinion or inference first be based upon facts or data perceived by the witness or admitted into evidence at the hearing. Hundley argues that Dr. Brams' opinion had no basis in fact because it was based primarily on hearsay testimony by an incompetent witness, Potenza. However, to some degree, the opinion testimony was based upon hypothetical questions.

Dr. Brams testified that it was her opinion that the child's emotional problems were due to the alleged sexual abuse. Because Dr. Brams could not qualify as an expert witness upon this issue, the opinion must be viewed as that of a lay witness. Evid.R. 701 applies and must be satisfied in order for the opinion testimony to be admissible.

Pursuant to our discussion of Hundley's first cross-assignment of error, Dr. Brams' opinion was based on admitted evidence, which had been related to her by Potenza, a competent witness. Technically, Dr. Brams did not relay hearsay testimony of plaintiffs when she testified as to the basis for her opinions since it was not admitted to prove the truth of the statement. This was admissible not only for her expert opinion but, also, was necessary

testimony for a lay witness called upon to explain the foundation or basis for an opinion under Evid.R. 701. Her opinion testimony was not inadmissible because it was based on hearsay testimony.

Dr. Brams' testimony involved three separate opinions: (1) that Amy Potenza suffered from an adjustment disorder, (2) that the adjustment disorder was caused by the alleged sexual abuse, and (3) that Potenza related her own personal experiences rather than something she had been told or learned. Dr. Brams' threshold opinion that Potenza suffered from an adjustment disorder was not admissible under Evid.R. 701 because, based on Dr. Brams' own professional perception of her patient, it constituted an expert, not lay opinion.

Her second opinion was inadmissible. At most, the jury could properly be told merely the reaction of Potenza to questions posed about the alleged sexual abuse about her family situation, and about her own misbehavior. The jury, as the trier of fact, made its own inferences and reached its own conclusions on the actual cause of Potenza's emotional disturbance. Just as a testifying lay person is not permitted to testify as to the medical cause of an injury, Dr. Brams, testifying as an expert, even though a child psychologist, is not permitted to testify as to the cause of emotional distress unless based upon personal knowledge or a proper hypothetical question.

Opinion testimony by Dr. Brams as to the credibility of the child is not only error, it is prejudicial error. Independent testimony of Potenza and her mother provided sufficient evidence from which the jury could conclude that Hundley sexually abused Potenza. However, the inadmissible testimony from Dr. Brams that the child spoke from her own experience could have improperly influenced the jury's verdict and is therefore prejudicial. Dr. Brams testified to the effect that Potenza had in fact been sexually abused and based her opinion upon that fact. She had no personal knowledge and was relying upon a history, but her opinion testimony went beyond the proper bounds and effectively included an opinion that the child had been sexually abused by "Joe," even though the medical evidence was inclusive. Dr. Brams is not a medical doctor but, rather, is a psychologist which precludes her from giving medical opinions. The trial court did at first strike her opinion testimony opining as to the child's veracity but later allowed the witness to testify that the child related her own experience, not what someone had told her, which, of course, is doing indirectly what the court had not allowed her to do earlier. Accordingly, Hundley's second cross-assignment of error is well taken.

By Hundley's third and final cross-assignment of error, he maintains that the jury verdict of $425,000 was influenced by "sympathy" for Potenza

and was not supported by competent evidence. Apparently, defendant contends that the money award should be overturned since there was not sufficient evidence of sexual abuse and that the jury could only have found for plaintiffs out of sympathy for the child. Where the verdict is supported by competent, credible evidence, an appellate court will not reverse the jury's decision as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Because the record contains sufficient competent credible evidence to support the jury's award of $425,000, and defendant has not demonstrated that the verdict was prompted by "sympathy" by the jury, this cross-assignment of error is not well-taken. However, because of the sustaining of the second cross-assignment of error, there necessarily will be a new trial upon remand.

For the foregoing reasons, plaintiffs' second, third, fourth, fifth, and sixth assignments of error and defendant's first and third cross-assignments of error are overruled; plaintiffs' first assignment of error and defendant's second cross-assignment of error are sustained; the judgment of the court of common pleas is affirmed with respect to the judgment in favor of Groveport; the judgment is reversed with respect to the judgment in favor of UTI and the judgment against Hundley; and this cause is remanded to that court with instructions to grant a new trial for plaintiffs on all issues pertinent to UTI's liability as a common carrier and to grant a new trial to Hundley.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded*
*with instructions.*

McCORMAC and PEGGY BRYANT, JJ., concur.