[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] ON RECONSIDERATION
 OPINION
Defendant-appellant, Middletown-Monroe City School District Board of Education ("Board"), has filed a motion for reconsideration contending that this court erred in concluding that the Board was not immune from suit for injuries sustained by plaintiff-appellee, Linda O. Day's, daughter, Nicole Lynn Day. The Board's motion has merit, and the motion is granted.
Nicole was a sixteen-year-old student at Garfield School, located in the Middletown-Monroe City School District ("District") and operated by the Board. On March 17, 1997, Nicole was transported by bus from school to home. The school bus dropped her off near 550 North University Boulevard in Middletown, Ohio. Walking home, Nicole crossed a set of railroad tracks. While crossing the tracks, she was struck by a freight train. Nicole suffered serious injuries and is presently in a coma.
Linda filed a complaint against the Board, the District, and a John Doe company, the bus company which transported children on behalf of the Board and District. Linda later filed an amended complaint against the original defendants as well as a John Doe employee, the bus driver who had dropped off Nicole. The Board and District filed an amended answer and a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6),[1] asserting immunity from suit pursuant to R.C. Chapter 2744. Linda filed a memorandum in opposition to the motion to dismiss.
The trial court granted the motion to dismiss as to the District but denied the motion as to the Board. The trial court found that the District is a territorial area, not a legal entity subject to suit. Presuming that all of the factual allegations in Linda's complaint were true and making all reasonable inferences in her favor, the trial court found that it "must assume that the alleged exceptions to immunity are true as alleged in the Complaint." The Board was precluded from asserting immunity for purposes of the motion to dismiss.
On appeal by the Board, this court found that the Board was immune from suit for its decision as to locating the bus stop, following the rationale of Griner v. Minster Bd. of Edn. (1998),128 Ohio App.3d 425. Day I at 7. However, we found that the bus driver, as an employee of the Board, was performing a proprietary function when dropping off Nicole at the assigned bus stop. Dayv. Middletown-Monroe City School District (May 1, 2000), Butler App. No. CA99-11-186, unreported, at 7 ("Day I"). This court found an exception to immunity to be applicable because Linda's complaint included sufficient allegations to support a theory of negligence by the bus driver by not assuring Nicole's safety. Id. at 11. The trial court's decision was affirmed. In its original appeal, and in its motion for reconsideration, the Board raises a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE BOARD OF EDUCATION BY OVERRULING ITS CIV.R. 12(B)(6) MOTION TO DISMISS PLAINTIFFS-APPELLEES' SECOND AMENDED COMPLAINT.
A motion for reconsideration may be granted where the motion calls to the court's attention an obvious error in its decision or raises an issue for consideration which was either not previously considered or not fully considered when it should have been. Grabill v. Worthington Industries, Inc. (1993),91 Ohio App.3d 469, 471. In its motion, the Board contends that this court incorrectly determined that the actions of the bus driver concerned a proprietary function of the board. The Board asserts that all acts of the Board and its employees in transporting students concern a governmental function.
In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6), "it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery."O'Brien v. Univ. Community Tenants Union, Inc. (1975), 42 Ohio St.2d 242, syllabus. A complaint should not be dismissed merely because its factual allegations do not support the legal theory on which the plaintiff relies. The court must examine the complaint to determine if the allegations provide for relief on any possible theory. Fahbulleh v. Strahan (1995), 73 Ohio St.3d 666, 667. The court must presume that all factual allegations in the complaint are true and construe all inferences that may be reasonably drawn therefrom in favor of the nonmoving party. Bridges v. Natl. Eng. Contracting Co. (1990), 49 Ohio St.3d 108, 112.
When reviewing the complaint, it must be remembered that consistent with notice pleading, Civ.R. 8(A)(1) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Leitchman v. WLW Jacor Communications, Inc.
(1994), 92 Ohio App.3d 232, 234. It is easy for the pleader to satisfy the requirements of Civ.R. 8(A), and few complaints are subject to dismissal. Id., citing Slife v. Kundtz Properties,Inc. (1974), 40 Ohio App.2d 179, 182. This is so even where the court doubts that the nonmoving party will prevail at trial. Id.
The doctrine of sovereign immunity is preserved for government subdivisions in R.C. 2744.02(A)(1), by which a political subdivision
 is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
The Board is a political subdivision subject to R.C. Chapter 2744. R.C. 2744.01(C)(2)(c) and (F).
Analysis of immunity claims on behalf of political subdivisions requires a specific analysis under R.C. Chapter 2744. It must first be determined whether the action undertaken by the political subdivision is governmental or proprietary in nature, as such functions are respectively defined in R.C. 2744.01(C) and (G). The political subdivision is granted immunity for any injury arising out of its action, unless an exception to immunity, contained in R.C. 2744.02(B), is applicable. R.C. 2744.02(A)(1). Should one of the exceptions to immunity be applicable, the court must then look to R.C. 2744.03, which provides to the political subdivision and its employees certain defenses and immunities to liability. R.C. 2744.03(A).
R.C. 2744.01(C)(2) lists specific governmental functions. Although the provision of a system of public education is a listed governmental function, R.C. 2744.01(C)(2)(c), the transportation of students is not a listed governmental function. General definitions for determining if an unlisted activity constitutes a governmental function are established by R.C. 2744.01(C)(1):
 "Governmental function" means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 (b) A function that is for the common good of all citizens of the state;
 (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.
The decision of the Board to undertake transporting students and assign bus stops is unquestionably a governmental function, as that decision directly relates to the provision of a system of public education. Day I at 7, citing Griner v. Minster Bd.of Edn. (1998), 128 Ohio App.3d 425, 433-434, discretionary appeal not allowed, 83 Ohio St. 1464. However, as noted by this court, not every activity incidental to operating a school district is a governmental function. Day I at 7, fn. 2.
The Board correctly points out that the test distinguishing between discretionary and ministerial functions of political subdivisions set forth in Tinkham v. Groveport-Madison LocalSchool Dist. (1991), 77 Ohio App.3d 242, 251-252, jurisdictional motion overruled (1992), 63 Ohio St.3d 1441, as quoted fromEnghauser Mfg. Co. v. Ericksson Eng., Ltd. (1983), 6 Ohio St.3d 31, paragraph two of the syllabus, is no longer the governing test when determining if a political subdivision is immune from civil suit. Although the enactment of R.C. Chapter 2744 abrogated theEnghauser test in favor of statutory definitions of governmental and proprietary functions, the former distinction is still be useful under certain circumstances when determining whether certain sections of R.C. Chapter 2744 are applicable. See Perkinsv. Norwood City Schools (1999), 85 Ohio St.3d 191, and Carpenterv. Scherer-Mountain Ins. Agency (Oct. 19, 1999), Lawrence App. No. 98CA39, unreported, appeal dismissed (2000), 88 Ohio St.3d 1424. Nonetheless, a full consideration of R.C. 2744.01(C)(1) compels the conclusion that transporting and dropping off students such as Nicole meets the definition of a governmental function.
Transporting students is part of providing a system of public education. R.C. 3327.01 mandates transportation be provided by city, local, and exempted village school districts for all resident students in grades kindergarten through eight who live within a specified distance from their assigned school. R.C.3327.01 leaves to the discretion of the district board of education whether there will be provided transportation for students in grades nine through twelve. Any nongovernmental entity which seeks to transport students by school bus must first be licensed by the department of public safety. R.C. 4511.763.
The relationship between the state and school districts is instructive in determining that transporting and dropping off students is a governmental function. Section 2, Article VI, Ohio Constitution requires that the "general assembly shall make such provisions * * * as * * * will secure a thorough and efficient system of common schools throughout the state[.]" The state board of education and superintendent of public instruction are established by the Ohio Constitution, with their respective powers prescribed by law. Section 4, Article VI, Ohio Constitution. The board of education is given the primary authority to generally supervise Ohio's system of public education. R.C. 3301.07. The department of education is "the administrative unit and organization through which the policies, directives, and powers of the state board of education and the duties of the superintendent of public instruction are administered by such superintendent as executive officer of the board." R.C. 3301.13.
The department of education classifies and charters school districts. R.C. 3301.16. The local boards of education manage and control the public schools within their respective districts, R.C. 3313.47, but the district boards' powers are limited to the extent that those powers are clearly and distinctly granted.State ex rel. Clarke v. Cooke (1916), 103 Ohio St. 465, paragraph two of the syllabus. The district boards of education are heavily regulated by the Revised Code, see R.C. Chapter 3313, and by the department of education. See Ohio Adm. Code Chapter 3301.
A state-wide system of public education is an obligation of sovereignty imposed upon the state by the Ohio Constitution.DeRolph v. State (1997), 78 Ohio St.3d 193, 203-204. Transporting students is a necessary part of providing a system of public education, with local school boards having the responsibility to transport students. R.C. 3327.01. The transportation of students is itself heavily regulated. See Ohio Adm. Code Chapter 3301-83. Where a nongovernmental entity seeks to transport students, it may do so only with the state's license. R.C. 4511.763. As a necessary part of a public system of education, the transportation of students is a function imposed upon the state and school districts as an attribute of sovereignty. The Board chose to provide transportation to older students. Under such circumstances, the transportation of students is a governmental function. R.C. 2744.01(C)-(1)(a).
The transportation of students also meets the definition of a governmental function in R.C. 2744.01(C)(1)(b). As outlined above, a district board of education, although the governing body within its respective district, is regulated by and answerable to state authorities. The district boards are local actors within a state-wide scheme of public education.
In this respect, the observations of the Texas Court of Appeals regarding the structure of the Texas public education system provide parallel insight into the functioning of Ohio's system of public education:
 As a general rule, activities which are carried on pursuant to the State's obligation for the general welfare of the public generally, or which are voluntarily assumed for the benefit of the public at large rather than for the primary benefit of its residents, are performed in a governmental function; activities which are performed primarily for the benefit of the inhabitants of the affected entity or agency are proprietary in nature. A school district is an integral part of the statewide public school system, and its activities, even though performed within the territorial limits of the district, do not render the activity local in nature. Such activities are performed for the benefit of all people in the state, and, therefore, are governmental functions. * * * The purpose for which the school district is created is purely governmental, and when carrying out the functions for which it was created, it could only act as an agent of the state. A school district's supervising and control of its students, school facilities, school activities, and school grounds are governmental functions. (Citations omitted).
 Heyer v. North East Indep. School Dist. (1987), 730 S.W.2d 130,133. The Supreme Court of Ohio recognizes that the provision of an efficient system of public education is "expressly made a purpose, not local, not municipal, but state-wide." DeRolph,78 Ohio St.3d at 203, quoting Miller v. Korns (1923), 107 Ohio St. 287,297-298. The provision of a system of public education and those functions necessarily related to that system of public education are done for the common good and are governmental functions. R.C. 2744.01(C)-(2)(b).
The transportation of students also meets the definition of a governmental function in R.C. 2744.01(C)(1)(c). The transportation of students promotes the health, safety, and welfare of the students, which serves the public health, safety, and welfare. See Heyer, 730 S.W.2d at 133. The transportation of students is not specified in R.C. 2744.01(G)(2) as a proprietary function. It is not an activity normally undertaken by nongovernmental persons. Although parents may transport their own children, and by agreement may transport other children by carpool, these parents are transporting the children for the benefit of those specific children, not the children of the district or the state as a whole.
In Smith v. Cleveland (Apr. 27, 1995), Cuyahoga App. No. CV-243585, unreported, 1995 WL 248405, the plaintiffs contended that the provision of school crossing guards by the city of Cleveland was a proprietary function. The plaintiffs argued in part that the crossing guards performed the same function as parents, because "parents routinely help small children to safely cross the street[.]" Id. at *3. The court disagreed, stating that "parents customarily assist their own children to safely cross the street. They do not normally present themselves at school crosswalks to help any child either safely arrive or leave a school. This is not an activity normally engaged in by nongovernmental persons." Id. at *4. (Emphasis added.) Providing transportation for students is analogous. Only the Board, or an entity acting at the behest of the Board and licensed by the state, provides transportation available for all students. The transportation of students meets all of the requirements of R.C. 274.01(C)(1)(c).
Because the transportation of students is a governmental function of the Board, the Board is immune from suit for injuries arising out of this function, unless one of the R.C. 2744.02(B) exceptions to immunity applies. R.C. 2744.02(A)(1). R.C.2744.02(B) provides, in relevant part:
 Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 (1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees upon the public roads when the employees are engaged within the scope of their employment and authority. * * *
 (2) Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions.
* * *
 (5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue or be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.
R.C. 2744.02(B)(2) is inapplicable, because it applies only to proprietary, not governmental, functions. We therefore determine if either R.C. 2744.02(B)(1) or (5) removes the Board's immunity.
Whether the action of dropping off a student at a school bus stop constitutes "negligent operation of any motor vehicle" as included in R.C. 2744.02(B)(1) was extensively addressed in Gloverv. Dayton Public Schools (Aug. 13, 1999), Montgomery App. No. 17601, unreported, 1999 WL 958492. That case held that the exception was not available where the plaintiff's claim was "based on the alleged improper location of the bus stop and the negligence or recklessness of [the school district] and [the bus driver] in continuing to use a dangerous drop-off point." Id. at *4. Although "operation of any motor vehicle" may encompass more than simply driving the vehicle, the term primarily concerns the "physical discharge from the bus" of the child. Id. at *6. Within this definition is included those situations in which a lift ramp is used to aid children in boarding and leaving the bus,Groves v. Dayton Public Schls. (Mar. 31, 1999), Montgomery App. No. 17391, unreported, or where the school bus remains present and is still unloading other passengers. Glover, citing Nolan v.Bronson (1990), 185 Mich. App. 163.
Linda's complaint contains no allegation that the bus was present when Nicole was struck by the freight train. Without such an allegation, there is no legal basis for asserting that Nicole's injuries resulted from the "operation of any motor vehicle." Neither "the planning and implementation of bus routes nor the bus driver's alleged negligence in discharging [Nicole] fit within the [R.C. 2744.02(B)(1)] exception to immunity for operation of any motor vehicle." Glover at *7.
We next consider whether the Board is liable pursuant to R.C.2744.02(B)(5) because the school bus driver allegedly violated a duty imposed by R.C. 4511.75. R.C. 4522.75(E) provides:
 No school bus driver shall start the driver's bus until after any child * * * who may have alighted therefrom has reached a place of safety on the child's or person's residence side of the road.
Violation of R.C. 4511.75(E) is a strict liability criminal offense. Middletown v. Campbell (1990), 69 Ohio App.3d 411,416-417, appeal dismissed (1991), 58 Ohio St.3d 713. Violation of this section may be used in establishing liability on common law principles of negligence. See Turner v. Central LocalSchool Dist. (1999), 85 Ohio St.3d 95, 101 ("Turner II").Turner II, though, did not discuss whether R.C. 4511.75(E) expressly imposes liability upon a political subdivision for purposes of R.C. 2744.02(B)(5). We again turn to Glover, which discussed this issue in depth. Relying upon the express language of both R.C. 2744.02(B)(5) and 4511.75(E), that court found that "R.C. 4511.75(E) imposes a duty, but does not provide for civil liability if the duty is violated." Glover at *12.
In this respect, the Second Appellate District disagreed with the Third Appellate District, which had held in Turner v. CentralLocal School Dist. (Sept. 5, 1997), Defiance App. No. 4-97-13, unreported ("Turner I"), affirmed in part, reversed in part (1999), 85 Ohio St.3d 95, that R.C. 4511.75(E) did impose liability because the relevant penalty provision, R.C. 4511.99, made a violation of R.C. 4511.75(E) a criminal offense. As noted in Glover, "[c]riminal liability, however, is not the same as civil liability for damages resulting from breach of the duty imposed by the statute." Glover at *9. Furthermore, the appellate court in Turner I provided no rationale by which its decision could be reconciled with the plain language of R.C. 2744.02(B)(5). Unlike Turner I, the decision in Glover is consistent with R.C.2744.02(B)(5). We therefore follow the reasoning of Glover. A violation of R.C. 4511.75(E) does not establish the exception to immunity provided by R.C. 2744.02(B)(5).
No R.C. 2744.02(B) exception to immunity is applicable.[2]
Thus, we need not consider the defenses and further immunities provided to the Board by R.C. 2744.03.
The transportation of students is a governmental function of the Board for which it is immune from suit. None of the exceptions to immunity in R.C. 2744.02(B) are available to remove the board's immunity. The trial court erred by not granting the Board's motion to dismiss the complaint. The assignment of error is sustained.
 ____________________________ YOUNG, J.
POWELL, P.J., concurs, WALSH, J., dissents.
[1] Civ.R. 12(B) provides:
 Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted[.]
[2] We must comment on one unsettling aspect of our decision. It appears that the effect of R.C. Chapter 2744 may be to grant school boards blanket immunity for any injury which a child suffers if dropped off by the school bus in a manner placing the child in danger, i.e., dropping the child off at the wrong stop or not ensuring that the child has reached a point of safety. This court can easily conceive of circumstances in which the school board should not be entitled to such complete immunity.