[Cite as *State v. Lamar-Smith*, 2016-Ohio-21.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102688**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KOMEKO LAMAR-SMITH

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-587255-A

**BEFORE:** Kilbane, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 7, 2016

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
17877 St. Clair Avenue
Cleveland, Ohio 44110


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Amy Venesile
Timsi Pathak
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Komeko Lamar-Smith ("Lamar-Smith"), appeals from his conviction for felonious assault. Having reviewed the record and the controlling case law, we affirm.

{¶2} On July 24, 2014, Lamar-Smith was indicted with one count of felonious assault, in violation of R.C. 2903.11(A)(1), for allegedly causing serious physical harm to Lindsey Bremer ("Bremer") on May 30, 2014. Lamar-Smith pled not guilty. He waived his right to a jury trial, and the matter proceeded to a bench trial on January 27, 2015.

{¶3} Bremer testified that she was attending a Memorial Day cookout with a small group of friends at her boyfriend's apartment complex in Warrensville Heights, Ohio. She had placed a $20 bill inside the cellophane of her pack of cigarettes and laid it on the picnic table. Lamar-Smith, a neighbor, walked over to the group who had been socializing. Moments later, he walked away with Bremer's cigarettes. Bremer approached him, asking for her cigarettes. Bremer testified that in response, Lamar-Smith punched her in the eye. She fell back and struck her head on the cement, chipping her teeth and injuring her elbows. Bremer further testified that she did not strike Lamar-Smith and denied jumping on his back.

{¶4} Bremer was taken to South Pointe Hospital shortly after midnight on May 31, 2014. She was treated for a nose fracture, dental fractures, and a corneal abrasion on her left eye. She was discharged approximately three hours later.

**{¶5}** Warrensville Heights Detective Dennis Fossett ("Detective Fossett") testified that Lamar-Smith provided a statement indicating that he had been in an altercation with Bremer's boyfriend, Duke Jones ("Duke"), who lives at the apartment complex where the cookout was held. The police were unable to obtain a statement from Bremer, despite repeated attempts to contact her. He did speak with Lamar-Smith, who told Detective Fossett that his friend, Ernest Hill ("Hill"), would verify his version of events. Detective Fossett was unable to obtain a statement from Hill, who indicated that he was intoxicated at the cookout and could not remember what had happened.

**{¶6}** Lamar-Smith testified on his own behalf. He acknowledged that he has prior convictions, but he denied violently attacking Bremer and said that such conduct was not consistent with his character. According to Lamar-Smith, although he was not part of the group of Duke's friends at the cookout, he and Duke have been friends for many years and he is always welcome to help himself to food. He prepared a plate of food for himself and went over to say hello to Duke. At that point, Duke struck him in the back of the head, and in response, he grabbed Duke. Bremer, who had been sitting on Duke's lap, approached from the left and struck Lamar-Smith with a set of keys, cutting his forehead. Lamar-Smith stated that he then reflexively struck out against the attack, in a backhand gesture. He stated that he did not specifically intend to strike or hurt Bremer.

**{¶7}** Lamar-Smith testified that he spoke with the police immediately after they arrived and explained what had happened. A photograph admitted into evidence depicts a small cut just beneath Lamar-Smith's left eyebrow.

**{¶8}** The trial court found Lamar-Smith guilty of felonious assault as charged in the indictment. On February 26, 2015, the trial court determined that community control sanctions will adequately protect the public and will not demean the seriousness of the offense. The court sentenced Lamar-Smith to two years of community control sanctions and ordered him to pay $480 in restitution.

**{¶9}** Lamar-Smith now appeals and assigns four errors for our review.

### Assignment of Error One

The trial court erred when it sustained the State's objection to Defendant-appellant's testimony regarding retaliatory action taken by the alleged victim.

### Assignment of Error Two

Defendant-appellant's conviction must be reversed because of improper cross-examination regarding his criminal history.

### Assignment of Error Three

Defendant-appellant's conviction must be reversed for ineffective assistance of counsel.

### Assignment of Error Four

Defendant-appellant's conviction was against the manifest weight of the evidence.

Evid.R. 616

**{¶10}** In his first assignment of error, Lamar-Smith asserts that the trial court erred when it sustained the state's objection to his testimony that after the altercation on May 30, 2014, Bremer and Duke approached him at his apartment and Duke exhibited a weapon. He argues that this evidence would have supported his claim that Bremer and Duke exhibited animosity toward him and would have negated the claim that he was the aggressor.

**{¶11}** We review the trial court's ruling for an abuse of discretion. *State v. Smith*, 126 Ohio App.3d 193, 205-206, 709 N.E.2d 1245 (7th Dist.1998), citing *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

**{¶12}** Pursuant to Evid.R. 608(B):

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

**{¶13}** In addition, Evid.R. 608(B), precludes the admission of extrinsic evidence as it relates to conduct reflecting upon untruthful character unless clearly probative. *Smith* at 205.

**{¶14}** Evid.R. 616 governs methods of impeachment of witnesses and states in relevant part as follows:

Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.

{¶15} In this matter, our review of the record indicates that this line of questioning was not pursued during the defense's cross-examination of Bremer in order to impeach her following her direct testimony. Rather, it was offered during Lamar-Smith's direct testimony, as extrinsic evidence of a specific instance of subsequent conduct in order to negatively reflect upon Bremer's version of events. It was highly prejudicial and of minimal probative value since it purported to relate to events after the cookout. We therefore conclude that the trial court not did not abuse its discretion in concluding that this evidence was not admissible.

{¶16} The first assignment of error is without merit.

Evid.R. 609

{¶17} In his second assignment of error, Lamar-Smith argues that the trial court erred in permitting the state to cross-examine him regarding his prior convictions.

{¶18} As an initial matter, we note that it was Lamar-Smith who first presented evidence of his record to the trial court, as he testified on direct examination as follows:

Q. And, Mr. Smith, you've been in court before, right?

A. Yes.

Q. Okay. And you have a criminal record, correct?

A. Yes.

Q. Okay. And you're well aware that the Court already knows about your criminal history, correct?

{¶19} Insofar as he challenges the state's cross-examination of him regarding his record, we note that a reviewing court will not reverse a trial court's decision on the admission or exclusion of evidence absent an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Moreover, in a bench trial, the court is presumed to consider only reliable, relevant, and competent evidence in rendering its decision unless it affirmatively appears to the contrary. *State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 27, citing *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968).

{¶20} Pursuant to Evid.R. 404(A)(1), "Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible[.]" In accordance with this rule, a defendant may introduce testimony, through himself or others, of a relevant character trait that would tend to prove he acted in conformity therewith on a particular occasion. However, doing so "opens the door" to allow the prosecution to rebut the same trait. The staff notes to Evid.R. 404(A)(1) illustrate this point:

> The basic rule is that the defendant may, at his option, offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character. This is often denominated the "mercy defense." If the accused offers evidence of his good character,

then and only then, can the prosecution offer evidence of the bad character of the accused.

{¶21} Therefore, when a defendant offers evidence of his peaceful or nonviolent nature, he opens the door for the state to rebut that claim and under Evid.R. 405, this may include specific instances of conduct. *See State v. Collins*, 97 Ohio App.3d 438, 446, 646 N.E.2d 1142 (8th Dist.1994) (where defendant's grandmother testified that he is not a troublemaker, she was properly cross-examined with reference to his prior record); *State v. Hart*, 72 Ohio App.3d 92, 97-100, 593 N.E.2d 463 (10th Dist.1991) (defendant's character witness was properly cross-examined with reference to his prior record).

{¶22} In addition, Evid.R. 609 provides for impeachment of witness by evidence of conviction of a crime. It states in relevant part:

> (A)(2) Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶23} In this bench trial, Lamar-Smith stated, on cross-examination, "I didn't just violently attack this woman. That is not my character." Under Evid.R. 405, the state was permitted to impeach this claim. The trial court is presumed to have correctly applied this rule, as well as Evid.R. 609, and considered only relevant evidence. We find no abuse of discretion.

{¶24} The second assignment of error is without merit.

Ineffective Assistance of Counsel

**{¶25}** In his third assignment of error, Lamar-Smith asserts that his trial counsel was ineffective for failing to subpoena witnesses who would have testified in support of his version of the events surrounding the altercation.

**{¶26}** In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 25 Ohio St.3d 144, 495 N.E.2d 407 (1986). "Judicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. Further, "trial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance." *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267, citing *State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987).

**{¶27}** In order to obtain a reversal on ineffective assistance of counsel based upon counsel's failure to subpoena witnesses, a defendant must demonstrate that the testimony of any one or more of the witnesses would be of significant assistance to the defense. *State v. Reese*, 8 Ohio App.3d 202, 456 N.E.2d 1253 (1st Dist.1982); *Cleveland v. Graham*, 8th Dist. Cuyahoga No. 100394, 2014-Ohio-3413, ¶ 11.

**{¶28}** In this matter, the record demonstrates that immediately after the trial court found Lamar-Smith guilty of felonious assault, his trial counsel stated:

> [Y]our Honor, I would point out that on Mr. Smith's behalf, I did have my investigators go out and talk to numerous different witnesses that were provided for us in this case. Many of those witnesses did support Mr. Smith's version of the events and what happened at that time; however, none of them would agree to come to court for us and would not honor a subpoena, for that matter. I can say as an officer of the Court that my investigator did go out and find other witnesses that did corroborate what Mr. Smith said. For those reasons, your Honor, I would ask the Court to impose either community control or a minimum term of incarceration.

**{¶29}** In this matter, the record demonstrates that Detective Fossett conducted a follow-up investigation. He went to the apartment complex at various times to speak with potential witnesses. Lamar-Smith informed Detective Fossett that Hill would support the defense version of events. However, Hill stated that he was unable to remember what had happened. No other potential witnesses were mentioned during the investigation of the incident or during the trial. On this record, we conclude that Lamar-Smith has failed to demonstrate that his trial counsel's performance was deficient since no specific witnesses have been identified. Moreover, there is no indication that the result of the trial would have been different had the potential witnesses testified.

**{¶30}** The third assignment of error is without merit.

### Weight of the Evidence Supporting the Conviction

**{¶31}** In his fourth assignment of error, Lamar-Smith argues that his conviction for felonious assault is against the manifest weight of the evidence because Bremer's testimony of an unprovoked felonious assault after she tried to get her cigarettes is not

credible or logical. He also argues that his version of events, that he reflexively "struck blindly at [her] when she cut him with a set of keys," is more credible and is supported by the other evidence in the record.

{¶32} In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court explained a challenge to the manifest weight of the evidence supporting a conviction as follows:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6 Ed.1990)], at 1594.

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [Quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L.Ed.2d 652 (1982)]. *See, also, State v. Martin* (1983), 20 Ohio App. 3d 172, 175, 20 Ohio B. Rep. 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence

and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

{¶33} In this matter, Bremer testified that Lamar-Smith had not been invited to the cookout, but nonetheless helped himself to something to eat. She testified that she stopped him as he began to walk off with her pack of cigarettes that had her $20 bill. At that point, Lamar-Smith struck her in the face. She was transported to the hospital for emergency treatment. She sustained a broken nose and broke several teeth when she fell backward. Lamar-Smith testified that he was struck by Duke, and that Bremer then struck him with her keys, cutting his forehead. A small cut is depicted in a defense photograph. In an instinctive response to this cut, he then struck out in a backhanded fashion, striking Bremer.

{¶34} Following our review of the record, we conclude that the conviction is not against the manifest weight of the evidence. We cannot say that the court clearly lost its way and created a manifest miscarriage of justice in convicting him of felonious assault. The record as a whole clearly supports the state's version of events. It is far more credible that the great injuries Bremer sustained to her eye, nose, and teeth were from the

head-on punch that she described, and not from an instinctive, reflexive, and backhand blow, "struck blindly" at Bremer. In addition, although defendant has a small cut beneath his eyebrow, it is not logical that this small wound would have triggered such a violent response. The conviction is not against the manifest weight of the evidence.

{¶35} The fourth assignment of error is without merit.

{¶36} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR