[Cite as *State v. Taylor*, 2025-Ohio-2455.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114565 |
| v. | : | |
| MOESHA TAYLOR, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** July 10, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692755-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Marco Tanudra Angelo, Assistant Prosecuting Attorney, *for appellee.*

Mary Elaine Hall, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Moesha Taylor ("Taylor") appeals her conviction and sentence following her guilty plea to felonious assault. Taylor's assigned appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S.

738 (1967), and now seeks leave to withdraw as appellate counsel. After thoroughly reviewing the record, we grant counsel's motion to withdraw and dismiss the appeal.

## I.  Background and Facts

{¶ 2}  On June 20, 2024, Taylor was indicted for Count 1, aggravated burglary, a first-degree felony under R.C. 2911.11(A)(1), and Count 2, felonious assault, a second-degree felony under R.C. 2911.11(A)(1).  The indictment charged that on or about June 3, 2024, Taylor

> did, by force, stealth, or deception, trespass, as defined in section 2911.21(A)(1) of the Revised Code, in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when [victim L.C.], a person other than the accomplice, was present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, to wit: Felonious Assault, RC 2903.11, and the offender inflicted, or attempted or threatened to inflict physical harm on [victim L.C.].
>
> . . . [and] did knowingly cause serious physical harm to [L.C.].

{¶ 3}  Taylor pleaded not guilty and, on July 5, 2024, was released on bond with a GPS monitor and no-contact order.  On August 26, 2024, Taylor was arrested for violating the no-contact order when an Uber vehicle she was traveling in that day entered the restricted zone of the victim's apartment building.

{¶ 4}  On September 26, 2024, at the GPS violation hearing, the parties discussed the security video that depicted the underlying incident.  The State narrated that Taylor went to the victim's apartment building after a romantic break-up and punched the victim, rendering her unconscious.  The State offered to nolle the aggravated burglary count if Taylor pleaded guilty to the second-degree felonious

assault as charged.  The charge carried a potential minimum range of two to eight years with a maximum of half of the minimum term issued pursuant to the Reagan Tokes Law.  Taylor was not receptive, the hearing was continued, and the parties were urged to pursue a mutually satisfying resolution.

{¶ 5}  At the October 15, 2024 pretrial, Taylor agreed to plead guilty to felonious assault as charged.  The trial court considered releasing Taylor on bond with a GPS monitor pending sentencing.  Toward the conclusion of the plea colloquy, Taylor changed her mind and maintained her innocence; a discussion ensued regarding setting a trial date for the next week.

{¶ 6}  Following a recess, Taylor decided to enter the guilty plea.  The trial court completed the plea colloquy, and the parties agreed that the plea had been knowingly, intelligently, and voluntarily made pursuant to Crim.R. 11.  Bond was restored subject to GPS restrictions pending sentencing.

{¶ 7}  Sentencing was conducted on November 12, 2024.  The presentence investigation report ("PSI") and police report were reviewed by the trial court. Taylor had no prior felony convictions but did have several previous encounters with the law and an outstanding warrant for a recent matter pending in the City of Euclid.

{¶ 8}  Trial counsel moved to withdraw from representation and added for the record:

> Basically, Judge, we got to a point where there was a complete breakdown in communication between my client and myself.  Basically she's accused me either directly or indirectly of working with the prosecutor to get her to plead, that I duped her into the plea, that I was withholding evidence from her . . . .

Tr. 58.

{¶ 9} After the trial court advised Taylor that making a statement could possibly be used against her, Taylor added that trial counsel "forced me to take that plea. He kept telling me that's the only plea that I can get. Every time he came to see me, it was like, 'Okay, well this is the only thing you can get'" — Tr. 61. "Or, 'You might as well take the plea. That's all you're going to get. You're not going to get anything else. Take the plea. Take the plea.'" Tr. 61-62. The trial court denied the motion to withdraw.

{¶ 10} Trial counsel next stated that, alternatively, Taylor desired to withdraw her plea. The trial court opined that it appeared Taylor may have been reacting to the arrival of the deputies indicating she would be going to jail though Taylor had been informed there was no guarantee of probation. The defense countered that they had the impression from the previous hearing that the trial court's comment that if Taylor "was on her best behavior," "it would benefit her," meant that she would receive probation. Tr. 63.

{¶ 11} The trial court explained that it did not promise a particular sentence at the plea hearing and the referenced statement was effectively a matter-of-fact observation that it would benefit Taylor while on bond awaiting sentencing "to be on good behavior and not harass or bother or harm the victim again." Tr. 63.

{¶ 12} The State addressed the trial court on behalf of the victim who had inadvertently appeared at court the previous day when the building was closed and

could not afford to miss another day of work.[1] Tr. 79. The victim requested a prison sentence and stated she was knocked unconscious during the attack, was hospitalized, and had suffered a concussion. The victim admitted to the former relationship with Taylor but confirmed that it no longer existed.

{¶ 13} The trial court determined that prison was "an appropriate outcome and sanction" to provide incentives not to repeat the behavior, to deter Taylor, to encourage Taylor to recognize the seriousness of the behavior, and to incapacitate her from hurting others. Restitution was not requested or ordered.

{¶ 14} As journalized, Taylor was sentenced to "a minimum prison term/aggregate prison term of 2 year(s) and a maximum prison term of 3 year(s) at the Ohio Reformatory for Women." Taylor received 58 days of jail-time credit.

{¶ 15} On November 18, 2024, trial counsel filed a timely notice of appeal and, on November 19, 2024, moved to withdraw as counsel due to a conflict of interest. On January 20, 2025, this court granted the motion and appointed new counsel.

## II. Anders

{¶ 16} On January 27, 2025, appointed counsel filed a brief pursuant to *Anders*, 386 U.S. 738, and requested leave to withdraw as counsel. *Anders* held that where, after a conscientious examination of the case, appellate counsel is unable to find any meritorious issues for review, counsel may inform the court and request permission to withdraw from the case. *Id.* at 744.

---

[1] The day before the sentencing was the Veteran's Day holiday.

{¶ 17} The request must be "accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* A copy of the brief must be furnished to the indigent and time allowed for the indigent to raise any points that he or she chooses. "[T]he court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Id.* "If it so finds, it may grant counsel's request to withdraw and dismiss the appeal . . . ." *Id.* If the appellate court determines that one or more legal points have merit, the defendant will be afforded counsel to argue the appeal.

{¶ 18} On February 7, 2025, the *Anders* motion was referred to the merit panel for decision. Taylor was served with the motion and brief and advised of the right to file a pro se brief but has not done so. After a thorough review of the record, we grant counsel's motion to withdraw and dismiss this appeal.

## III. Potential Issues

{¶ 19} Counsel identifies three potential issues for appeal but explains that (1) they are not prejudicial and meritorious of review; and (2) when Taylor knowingly, intelligently, and voluntarily waived her right to trial pursuant to Crim.R. 11(2)(C), she forfeited the right to review.

> Potential Issue 1: The trial court committed plain error when it heard but did not see the video camera evidence at the pretrial (rather than at a bench or jury trial).

> Potential Issue 2: The trial court committed plain error when it refused to allow the defendant-appellant, Moesha Taylor to withdraw her guilty plea to a felony-two felonious assault.

Potential Issue 3: The Cuyahoga County Public Defender's Office rendered ineffective assistance of counsel to the defendant-appellant Moesha Taylor.

{¶ 20} After a thorough independent review of the record, we grant counsel's motion to withdraw and dismiss this appeal.

## IV. Discussion

### A. Plain Error

{¶ 21} The failure to object to an issue in the lower court forfeits the right of a party to challenge that issue on appeal absent plain error. *In re De.D.*, 2020-Ohio-906, ¶ 13 (8th Dist.). The Ohio Supreme Court has admonished courts to notice plain error """with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."" *State v. Rogers*, 2015-Ohio-2459, ¶ 23, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, quoting *State v. Long*, 53 Ohio St.2d 91 (1978).

{¶ 22} Notwithstanding Taylor's failure to properly preserve the issue, "we review this case for plain errors or defects affecting substantial rights under Crim.R. 52(B)." *State v. Johnson*, 2020-Ohio-2826, ¶ 12 (8th Dist.), citing *State v. Carmon*, 1999 Ohio App. LEXIS 5458, *8 (8th Dist. Nov. 18, 1999). "Crim.R. 52(B) provides that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *Id.*, quoting Crim.R. 52(B). "Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different." *Id.*, citing *State v. Sanders*, 2001-Ohio-189. "The burden of demonstrating plain error is on the party asserting

it." *State v. Quarterman*, 2014-Ohio-4034, ¶ 16, citing *State v. Payne*, 2007-Ohio-4642, ¶ 17.

## V. Discussion

### B. Judicial Fact-Finding

{¶ 23} The first potential issue is the trial court committed plain error when it heard but did not see the security video camera evidence at the pretrial (rather than at a bench or jury trial) when it sentenced Taylor to a minimum-maximum term of two to three years, violating Taylor's Sixth Amendment right to trial, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), adopted in Ohio by *State v. Foster*, 2006-Ohio-856.

{¶ 24} The hate-crime statute involved in *Apprendi* enhanced a defendant's sentence where the judge determined by a preponderance of the evidence that racial bias was a motive for the offense. The enhancement exceeded the maximum sentence for the crime by two years. *Foster* at ¶ 3. The *Apprendi* Court held that, by exceeding the statutory maximum based only on judicial fact-finding, Apprendi's Sixth Amendment rights were violated "because the jury, rather than judge, must find all facts essential to punishment." *Foster* at ¶ 3. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* at 490.

{¶ 25} The United States Supreme Court expanded on the *Apprendi* rule in *Blakely v. Washington*, 542 U.S. 296 (2004). Blakeley pleaded guilty to second-

degree kidnapping involving domestic violence and use of a firearm, a class-B felony

carrying a ten-year maximum prison penalty.

> Other sentencing provisions specified a "standard range" of 49 to 53
> months for second-degree kidnapping with a firearm. The sentencing
> judge imposed a prison term of 90 months, after making a finding of
> "deliberate cruelty," one of the statutorily enumerated grounds that
> justified an exceptional sentence. Thus, the sentence fell below the ten-
> year statutory maximum, but well above the 53-month maximum of the
> "standard range."

*Foster* at ¶ 6, citing *Blakely*.

**{¶ 26}** The *Blakely* Court held that "[b]ecause the facts supporting

petitioner's exceptional sentence were neither admitted by petitioner nor found by a

jury, the sentence violated his Sixth Amendment right to trial by jury." *Blakely* at

298.

**{¶ 27}** Counsel explains in the *Anders* brief that in *Foster,* 2006-Ohio-856,

the Ohio Supreme Court reasoned:

> "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum
> sentence *a judge may impose solely on the basis of the facts or
> reflected in the jury verdict or admitted by the defendant.* In other
> words, the relevant 'statutory maximum' is not the maximum sentence
> *a judge may impose after finding additional facts, but the maximum
> he may impose without any additional findings.*". . . Thus aside from
> the exception for prior criminal convictions and *the defendant's
> consent to judicial fact finding, the Sixth Amendment prohibits a judge
> from imposing a sentence greater than that allowed by the jury
> verdict or by the defendant's admissions at a plea hearing.*" [*Foster*,]
> 2006-Ohio-856, ¶ 7. The Court went on to hold, "Because
> R.C. 2929.14(B) and 2929.19(B)(2) require judicial fact finding before
> the imposition of a sentence greater that the maximum term authorized
> by a jury verdict or an admission of the defendant, they are
> unconstitutional. Because R.C. 2929.14(E) and 2929.41(A) require
> judicial findings of fact not proven to a jury beyond a reasonable doubt
> or admitted by a defendant, before repeat-violent-offender and major-

drug-offender penalty enhancements are imposed, they are unconstitutional. *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435; Blakely, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403."

(Emphasis in original.)

**{¶ 28}** Per *Anders*, 386 U.S. 738, counsel cites the following portion of the record for the September 26, 2024 violation hearing in support:

Court: Do you want to take a minute with your client? Have you been given a copy of this film?

Counsel: We watched it at my office, so it was on the computer.

Court: Was it a clear film in your eyes?

Counsel: No.

Taylor: No.

Counsel: Somewhere like what he said. It's not —

Court: It was clear enough that you couldn't tell who it was. Did the person who did the punch or knockout look like a big, tall person with big, long arms like Muhammad Ali, or a shorter person?

Counsel: That part was more obscured.

Court: Do you have the film now with you on your computer there?

State: Yes, your Honor.

Court: Could you play it for counsel? Play it for yourself and tell me what you see, and play it to counsel and he can tell me what he sees.

Counsel: I don't know if I really want to get into all the facts especially if we might be going to trial at some point. You can watch it if you want.

Court: I don't want to see it, but the screen is not facing me. I want the State to see it and tell the Court so the Defendant can hear what they see, and you can watch it together, and you can tell yourselves to evaluate the evidence. Go ahead.

Tr. 24-25.

{¶ 29} Counsel also cites portions of the November 12, 2024 sentencing hearing:

> Court: . . . The police report indicated that they were contacted because the defendant entered the apartment complex where this victim lives. We saw a film of it in one of our pretrials where the defendant snuck her way into this apartment building and punched — head punched the defendant, sucker punched her in essence, a couple times knocking her unconscious where she suffered a concussion, she had multiple face bruisings.
>
> She had been banned from the building, but managed to avoid security, come in and suddenly strike. And I recall the — watching the film for whatever the bond or pretrial issue was[.]
>
> The victim stated she had been apart from Ms. Taylor, the defendant, over — after a broken-up romantic relationship. She was banned from the building where she was staying. The police reviewed the video, and as stated, you can see, standing in front of the building, the defendant. Security wouldn't let her in. Another male was standing in the hallway, and when a fourth party left the building Taylor followed the male into the door. In other words, bypassed security successfully.
>
> Then Taylor is viewed walking right up to [the victim] and punched her in the face twice knocking her to the ground. [The victim] appeared to be — appeared in that video to be knocked unconscious for approximately three to five minutes before moving and acting disoriented.

Tr. 55-57.

{¶ 30} Counsel does not describe how the identified excerpts prejudiced Taylor. This court also observes that the trial court stated during sentencing that it viewed the video. Tr. 58-59.

{¶ 31} Counsel maintains that Taylor forfeited the right to raise this argument on the merits when she entered a knowing, voluntary, and intelligent plea of guilt under Crim.R. 11 instead of objecting and going to trial.

{¶ 32} "When a defendant enters a guilty plea, he generally waives all appealable errors that may have occurred unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea." *State v. Geraci*, 2015-Ohio-2699, ¶ 14 (8th Dist.), citing *State v. Jabbaar*, 2013-Ohio-2897, ¶ 5 (8th Dist.); *State v. Milczewski*, 2012-Ohio-1743, ¶ 5 (8th Dist.); *State v. Kelley*, 57 Ohio St.3d 127 (1991), paragraph two of the syllabus.

{¶ 33} Taylor confirmed her understanding during the plea colloquy that she was giving up her constitutional rights including the Sixth Amendment right to trial and the right to present witnesses and evidence in her defense as well as the right to confront and challenge witnesses and evidence. Taylor was also informed that the burden of proof was on the State and she could testify if she desired or refuse to do so without having it held against her pursuant to the Fifth Amendment.

{¶ 34} This court's review of the record corroborates counsel's contention that the potential issue lacks merit.

### C. Plea Withdrawal

{¶ 35} Counsel assigns a potential issue regarding the trial court's denial of Taylor's motion to withdraw her guilty plea. Crim.R. 32.1 reads: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 36} Counsel asserts that the withdrawal occurred "after" Taylor had been sentenced, *i.e.,* a "post-sentence" motion to withdraw. The record supports that

counsel made the oral motion to withdraw the guilty plea at the sentencing hearing promptly after the trial court denied trial counsel's motion to withdraw from representation but prior to sentencing. Thus, any challenge to withdraw the plea is analyzed under the discretionary presentence standard and not the manifest injustice standard applicable to postsentence withdrawals.

{¶ 37} Although "'a presentence motion to withdraw a guilty plea should be freely and liberally granted,'" "'a defendant does not have an absolute right to withdraw a plea prior to sentencing.'" *State v. Campbell*, 2018-Ohio-681, ¶ 8 (8th Dist.), quoting *State v. Xie*, 62 Ohio St.3d 521, 527 (1992). "'A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a plea.'" *Id.*, quoting *State v. Bloom*, 2012-Ohio-3805, ¶ 13 (8th Dist.). The decision remains "'within the sound discretion of the trial court.'" *Campbell* at ¶ 9, quoting *State v. Peterseim,* 68 Ohio App.2d 211, 213-214 (8th Dist. 1980).

{¶ 38} "'[U]nless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion.'" *Campbell* at ¶ 9, quoting *id.* "'One who enters a guilty plea has no right to withdraw it. It is within the sound discretion of the trial court to determine what circumstances justify granting such a motion.'" *Id.*, quoting *id.* at 214. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 39} To determine whether the trial court abused its discretion by denying a defendant's motion to withdraw a plea, we consider the following factors:

(1) whether the accused was represented by competent counsel; (2) whether the accused was afforded a full hearing pursuant to Crim.R. 11 before he entered the plea; (3) whether, after the motion to withdraw was filed, the accused was given a complete and impartial hearing on the motion; and (4) whether the record reveals that the court gave full and fair consideration to the plea-withdrawal request. *Peterseim* at paragraph three of the syllabus.

{¶ 40} At the September 26, 2024 pretrial, the State agreed to seek the victim's input regarding reducing the felonious assault to a third-degree felony, though Taylor had already expressed resistance to accepting it. The trial court encouraged the parties to see if they could reach a resolution by the next pretrial.

{¶ 41} During the October 15, 2024 plea hearing, the trial court indicated it would obtain a PSI, schedule the sentencing hearing for the next month, and consider releasing Taylor on bond pending the hearing. Taylor asked whether she would be released on bond if, instead of entering a plea, she wanted a trial. After a sidebar, Taylor decided to enter a plea and the trial court began the plea colloquy.

{¶ 42} The trial court stated the grounds for the charge and inquired whether Taylor understood them. Trial counsel announced that Taylor was unwilling to plead, maintained she did not fight with the victim, and requested a trial date. The trial was set for the next week, bond was granted, and the trial court recessed. The trial court returned to the bench at the request of the defense who advised the trial court that Taylor had again changed her mind. "After talking with Ms. Taylor again,

it's my understanding that she would like to plead guilty to the one count of felonious assault today." Tr. 47. Taylor confirmed.

{¶ 43} The trial court proceeded with the plea colloquy including discussing Taylor's right to trial, right to question witnesses, and right to introduce as well as challenge the State's evidence. Taylor confirmed her understanding and pleaded "guilty" to "knowingly causing serious physical harm to [the victim] on June 3 in violation of R.C. 2903.11(A)(1) of the law of Ohio." Tr. 51-2. The parties agreed that the plea was knowingly, intentionally, and voluntarily made. Taylor was released on bond with GPS tracking and referred for a PSI pending sentencing the next month.

{¶ 44} Advised by the trial court that anything Taylor elected to state on the record could be used against her, Taylor said trial counsel "forced me to take that plea. He kept telling me that's the only plea that I can get. Every time he came to see me, it was like, "Okay, well this is the only thing you can get" — Tr. 61. The trial court responded that counsel's advisement that the offer was the only thing she was going to get did not constitute force. The trial court added that it appeared Taylor's plea change may also have been inspired by the arrival of deputies indicating she would be going to jail.

{¶ 45} At the November 12, 2024 sentencing hearing, promptly after the trial court denied trial counsel's motion to withdraw from representation, the defense moved to withdraw the plea. "In the alternative, then, my client indicated that she wishes to withdraw her plea. She indicated to me that basically she only pled in order to get out [on bond] . . . ." Tr. 59.

{¶ 46} The plea withdrawal adjudication ensued:

Counsel: Yeah, it was — just based upon the last hearing, it was my interpretation and my client's interpretation that based upon what you said, we believed that if she was on her best behavior —

Court: That would benefit her.

Counsel: — that would benefit her and that you were in essence saying that —

Court: Well, I didn't promise any sentence, though. It would benefit her. It would be to her benefit to be on good behavior and not harass or bother or harm the victim again.

Counsel: Can we get a transfer to that just to —

Court: You can certainly get a transfer, but I recall — if you recall differently, correct me. Jog my memory. Are you — you're saying that I — you're not saying that I told you she would get probation if she didn't get in trouble between now and then.

Counsel: That's how I interpreted it.

Court: Well, you can interpret it any way you want, but I — that wasn't the message I was sending. Okay. You put that on the record. You can pull up the record and contradict me. If I said it and I'm wrong, I'd be very surprised at myself.

Counsel: Can we get a continuance —

Court: That's not my practice at all. Never has been my practice to predict absolutely what a sentence will be, because I keep an open mind because I don't know what will happen at a sentencing or what will come up from these presentence reports or what the victim might say or whatever. So I never lock myself in in that way. I leave room. I leave legal room in case something happens.

Tr. 63-64.

{¶ 47} The trial court denied the defense request for a continuance to see whether the transcript supported that if Taylor exercised good behavior pending sentencing, she would receive probation.

{¶ 48} During the plea hearing, the parties discussed Taylor's background, personal circumstances, and criminal history. The trial court considered granting bond if a plea was entered pending sentencing within the next month. Trial counsel assured the trial court that Taylor would stay away from the victim and added, "I do think she would be a good candidate for probation. I do think she would be successful for the record. I don't know if she wants to plea though. That's where we left it." Tr. 37.

{¶ 49} Thus, at that point, the trial court was focused on whether to release Taylor for bond purposes pending sentencing and was acquiring information that could ultimately be useful for sentencing. There was no promise of a specific sentence.

> Court: Well, if she pled and we gave a month for the probation department to do a PSI and time for the victim to be contacted so she can come in and give her speech. She has a right to give her speech, the victim, right?
>
> [Counsel] Correct.
>
> . . .
>
> Court: . . . So I want to be sure, if there is a plea, that she wouldn't go anywhere near there [the victim's residence] before I do sentencing and put anybody on probation that I would want to have a month in between where she didn't get in any jackpots [sic] or go anywhere near the victim.
>
> Counsel: Meaning you would give her —
>
> Court: I'd give her bond during this period, and a month later she'd come in back in and we'll see how she did. If she's working, clean, and staying away from the victim, that would be held strongly in her favor.

Tr. 37-38.

**{¶ 50}** Counsel stated for the record:

> So to make sure we're absolutely clear, Ms. Taylor, what he's telling you on the record is if you pled today to the mark that the prosecutor is offering you, he would release you today on bond, let you go home, do what you need to do, make sure you can stay away from the victim for a month, right? Make sure you're doing everything you need to do for a month. We'd come back for sentencing, *sounds like he's leaning towards giving you probation and continuing that. That's what he's telling you on the record.*
>
> If you don't want to do that, we have to get a trial date. And I don't know how far out —

(Emphasis added.) Tr. 37.

**{¶ 51}** The trial court elaborated:

> Now, I sat here and I advised you of your rights, your trial rights, and you told me you wanted the plea, you didn't want your trial. I believed you, I accepted that plea. I accepted what you stated. Now it's apparent — the deputies have walked in that there's a likelihood you're going to jail. And your attorney's informed you that, because I informed him that, you know, you're not getting any guaranteed probation here. So it appears to me you are reacting.

Tr. 62.

**{¶ 52}** The trial court made it clear that there was never a promise of any sentence and the record does not contain one. A review of the record reveals that (1) Taylor was represented by highly competent counsel, (2) was afforded a full hearing pursuant to Crim.R. 11 before entering her plea, (3) was afforded a complete and impartial hearing on the motion; and (4) the trial court gave full and fair consideration to the plea-withdrawal request. *Peterseim,* 68 Ohio App.2d at paragraph three of the syllabus (8th Dist.).

**{¶ 53}** The second potential issue lacks merit.

### D. Ineffective assistance of counsel

{¶ 54} The final potential issue is that trial counsel's assistance was ineffective, resulting in prejudice to Taylor's Sixth Amendment right to trial during the critical stages of plea bargaining and sentencing.

{¶ 55} A defendant has the constitutional right to the assistance of counsel in all criminal proceedings. Sixth Amendment, U.S. Const., amend. VI, and art. I, § 10 of the Ohio Constitution. The United States Supreme Court has recognized that "the right to counsel is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

{¶ 56} "A claim of ineffective assistance of counsel is judged using the standard announced in *Strickland* . . . ." *State v. Sims*, 2021-Ohio-4009, ¶ 21 (8th Dist.), citing *State v. Bradley*, 42 Ohio St.3d 136 (1989). "'Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Id.*, quoting *id.* at paragraph two of the syllabus.

{¶ 57} "'[A] trial attorney does not violate any substantial duty in failing to make futile objections.'" *State v. Mathis*, 2019-Ohio-3654, ¶ 48 (8th Dist.), quoting *State v. Mitchell*, 53 Ohio App.3d 117, 119 (8th Dist. 1988) ("[A] trial attorney does not violate any substantial duty in failing to make futile objections."). In addition to demonstrating that counsel's performance fell below the objective standard of reasonable representation, Taylor must demonstrate that she was prejudiced by the

performance and the results of the sentencing hearing would have been different. *See State v. Fisher*, 2020-Ohio-670, ¶ 21 (8th Dist.).

{¶ 58} Counsel contends that a potential claim by Taylor that trial counsel was ineffective is not supported by the record. Against trial counsel's advice, Taylor was not receptive to trial counsel's efforts to have the charge lowered to a third-degree felony with a shorter potential jail term that was also a probational offense. Taylor subsequently chose to plead to the second-degree felony and, at one point at the sentencing hearing, stated she only entered a plea so she could be free on bond pending sentencing. After the trial court denied trial counsel's motion to withdraw from the case, trial counsel advocated for plea withdrawal, advancing that trial counsel and Taylor understood the trial court to indicate during the plea proceedings that Taylor's lawful behavior while on bond would benefit her by translating into a promise for a sentence of probation. Finally, the trial court provided a rule-compliant explanation of Taylor's constitutional right, emphasizing her Sixth Amendment right to trial. Thus, Taylor's plea was knowingly, intelligently, and voluntarily made and there record does not support that trial counsel's assistance was deficient.

{¶ 59} The third potential issue also lacks merit.

## VI. Conclusion

{¶ 60} As required by *Anders*, this court has completed a full examination of all the proceedings. We conclude that there are no arguable legal points on the merits

of this matter.  We determine that this appeal is wholly frivolous pursuant to *Anders v. California*, 386 U.S. 738.

{¶ 61}  Counsel's request to withdraw is granted and we dismiss this appeal.

{¶ 62}  Judgment is dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, A.J., and
EMANUELLA D. GROVES, J., CONCUR